UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SHANNON O.,[1] | ) Case No. 5:19-cv-01720-JDE |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
| | ) ORDER |
| v. | ) |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff Shannon O. ("Plaintiff") filed a Complaint on September 9, 2019, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on June 29, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# BACKGROUND

Plaintiff protectively filed her application for DIB on February 26, 2016, and she filed her application for SSI on March 1, 2016. AR 25, 263-71. In both applications, she alleged disability commencing on January 11, 2008. AR 25, AR 263, 265. On July 2, 2018, after her applications were denied initially and on reconsideration (AR 175-79, 188-92, 194-98), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), and a vocational expert ("VE") testified telephonically. AR 26, 85-122.

On August 6, 2018, the ALJ issued a written decision concluding Plaintiff was not disabled. AR 25-34. The ALJ found Plaintiff met the insured status requirements of the Social Security Act ("SSA") through December 31, 2010, and that she had not engaged in substantial gainful activity since her alleged onset date. AR 27. The ALJ found she had the severe impairments of degenerative disc disease of the cervical spine; tendonitis of the left shoulder; and lumbar strain. AR 28-29. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform light work[2], specifically as follows: (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for six hours out of an eight-hour workday with regular breaks; (3) sit for six hours out of an eight-hour workday with regular breaks; (4) occasionally push and pull with the non-dominant left upper extremity; (5) frequently climb, balance, stoop, kneel, crawl, and crouch; (6) never climb ladders, ropes, or scaffolds; and (7) occasionally reach overhead with the non-dominant upper extremity. AR 29.

---

[2] "Light work" is defined as
    lifting no more than 20 pounds at a time with frequent lifting or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The ALJ further found that Plaintiff was capable of performing her past relevant work as a sales representative, building equipment and supplies (Dictionary of Occupational Titles 274.357-018) because that work did not require performance of work-related activities precluded by her RFC. AR 33-34. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the SSA, from the alleged onset date of January 11, 2008, through the date of the decision. AR 34. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-6.

## II.

## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole,

---

carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at 720-21; <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (<u>Molina</u>, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." <u>Brown-Hunter</u>, 806 F.3d at 492 (citation omitted).

**B. <u>Standard for Determining Disability Benefits</u>**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. <u>See</u> <u>Ford v. Saul</u>, 950 F.3d 1141, 1148-49 (9th 2020); <u>Molina</u>, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." <u>Molina</u>, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. <u>Id.</u> If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do

4

not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present one disputed issue: did the ALJ properly considered Plaintiff's subjective testimony. See Jt. Stip. at 5.

5

**A.   Applicable Law**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity" of the symptoms. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).[3]

**B.   Analysis**

At the July 2018 hearing, Plaintiff, testified as follows. She used to work as an inside sales representative for a pipe and tube distributor. AR 90. She has

_____

[3] Before the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r of Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020).

not worked since 2005, when she went on maternity leave. AR 90. She injured her back, neck, and left arm in a July 2006 motor vehicle accident, which sent her to the emergency room. AR 90-91. She became unable to work on January 11, 2008, her alleged-onset date. AR 89.

She sees Dr. Yvonne Lawson with Magan Medical Clinic. AR 93-94. She has been seeing Dr. Lawson since the 1990s, and she has been going to Magan since 2008. AR 94. Additionally, she is treated by neurologist and surgeon Dr. Bradley Rosenberg, who is also with Magan. AR 94-95. When she first started seeing Dr. Rosenberg immediately after the accident, he treated her for 34 different medical problems, including related to her back, hip, sacroiliac ("SI") joints, head, abdominal pain, and upper-respiratory infection. AR 95-96.

She never had surgery, but took part in physical therapy, home exercises, and pain management with medication. AR 92. She did physical therapy for three different durations. AR 92. Eventually, her insurance company escalated her copay to $75 or $100, so she would attend therapy, learn the exercises and pain management, and then do the exercises at home. AR 93. Her last experience with physical therapy lasted about three months, and she also participated in water therapy. AR 93. Currently, she is doing her home physical therapy exercises a few times a week, but she is limited by how bad her pain is on a given day. AR 93, 102.

For her low back pain, she also received a set of three SI joint injections and three epidural injections. AR 96-97. The epidurals helped in the beginning, but her last one about a year-and-a-half ago did not provide relief. AR 97. She also had a steroid injection in her left shoulder about a year ago. AR 98.

She asked her doctor about surgery, but he said he wants her to wait as long as she can because surgery would not always fix the types of problems she has, and she may end up with more pain. AR 102-03. He also wanted to perform more neurological tests before he recommends surgery. AR 103.

Plaintiff also experiences migraine headaches two to three times a week, and sometimes multiple times a day, including at the hearing. AR 107, 109. When she has these headaches, she first experiences a "weird heaviness" and loses her vision. AR 109. She also sees "flashing lights" for 15 to 45 minutes, and when they end, she experiences throbbing pain and tiredness like having a heatstroke, which can continue for three to four hours or until she falls asleep. AR 109-10. She has been prescribed two different medications for these symptoms. AR 108, 110. Her headaches can also cause vertigo, but the vertigo may occur without the headaches. AR 110-11. She has cystic lesions that are related to her headaches. AR 108-09. She was seen at UCLA Health Center for her cysts, and doctors told her the cysts are very dangerous but did not want to touch them unless they became life threatening. AR 109. The doctors also said they had to watch the cysts and have magnetic resonance imaging done every six months to a year. AR 109.

She takes medication her high blood pressure, Xanax for anxiety, ulcer medication, Norco for pain, and stomach medication to enable her to take the other medications. AR 98. She does not see a mental health provider; her primary-care physician prescribes the psychotropic medications. AR 98-99.

She can usually get herself ready for the day but some days needs help getting in and out of the shower. AR 99. When her back is at its worst, she can barely move and requires assistance getting up and down. AR 99-100. Her back can seize up and become "stuck," and she has spasms. AR 100. She needs help when this happens. AR 100. She has a driver's license but does not drive on a regular basis. AR 89. She drives "short trips" about once a month, unless she has more doctor's appointments, up to once a week. AR 89, 102. She does not leave her house very often due to her pain. AR 89.

She lives with two other adult family members and her 12-year old son. AR 88-89, 101. She can do housework and laundry, but she has difficulty and

she cannot do so every day. AR 100, 102. Her son's father shops for groceries. AR 101. She may assist with some food preparation, but she no longer cooks or does anything that requires extended standing or lifting. AR 101. Her family mostly eats quick, prepared meals, or her son's father cooks. AR 101. She cannot lift heavy items, such pots of water. AR. 101.

She gets her son and others up in the morning, makes coffee, and then sits for about 45 minutes before she must lie on one of her sides to relieve pain. AR 100, 102-03, 106-07. Dishes can stack up for days, and she will wash them in increments, such as the cups or plates, and they lie back down. AR 103, 107. Later she will come back later, load the dishwasher, and then lie down again. AR 103, 107. She can go out socially, but not on a regular basis. AR 107. She has missed many things because of her condition. AR 107. She does not have friends or a social life anymore. AR 107.

She can stand or walk for about 45 minutes before she must sit down and rest. AR 104. She usually cannot last an hour "without feeling like crawling out of [her] skin." AR 104. She can lift about eight to 10 pounds. AR 105. As an example, she can lift about a half-gallon of water and will feel pressure, but when she lifts a full gallon she experiences "crushing" pain in her back. AR 105. Sitting is worse than standing; she has to get up and move after about 30 minutes of sitting. AR 106. Lying flat on her back does not help, but she can lay from her left hip and lean on her side, and then switch sides. AR 106-07. She spends most of the day doing this. AR 107.

The ALJ summarized portions of Plaintiff's testimony, and he found her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were "not entirely consistent" with the medical evidence and other evidence in the record for the reasons explained in the decision. AR 30, 32. Those reasons were that Plaintiff's subjective

statements were not entirely consistent with: (1) her daily activities; (2) her treatment; and (3) the objective medical evidence. AR 32-33.

First, the ALJ found that Plaintiff's ability to participate in "some" activities of daily living were inconsistent with the alleged intensity, persistence, and limiting effects of her symptoms. AR 32. The ALJ specifically cited Plaintiff's ability to do personal-care tasks, laundry, dishwashing "a little at a time," grocery shopping, assisting with meal preparation but not cooking, helping "children" get ready for school, and driving to doctor's appointments once a week. AR 33.

Preliminarily, the Court notes that the ALJ appears to have mischaracterized some of Plaintiff's testimony about her daily activities. For example, when the ALJ asked if Plaintiff does the grocery shopping, Plaintiff responded that "My son's father grocery shops." AR 101. Further, although she said that she gets "kids . . . or whoever needs to be woken" up in the morning (AR 102), she testified that she lives with two other adults and only one minor, her 12-year-old son, who she cares for. AR 88, 100, 102, 106. But, even if the ALJ did not overstate Plaintiff's testimony regarding grocery shopping and childcare, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). "[O]nly if [the] level of activity [was] inconsistent with [a claimant's] claimed limitations would . . . activities

have any bearing on . . . [subjective testimony]." <u>Garrison</u>, 759 F.3d at 1016. A claimant's daily activities may be grounds for discounting testimony "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions . . . ." <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007); <u>see also</u> <u>Childress v. Colvin</u>, 2015 WL 2380872, at *15 (C.D. Cal. May 18, 2015) (ALJ erred in finding claimant's daily activities were inconsistent with the alleged severity of impairments where there was no indication that the activities either comprised a "substantial" portion of claimant's day).

Moreover, the ALJ must when appropriate make findings about the transferability of daily activities to the workplace. <u>See</u> <u>Martinez v. Berryhill</u>, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ improperly "discounted [claimant]'s testimony based on her daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); <u>Orn</u>, 495 F.3d at 630 (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant" discounting testimony). This is particularly important because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." <u>Trevizo</u>, 871 F.3d at 682 (internal quotation marks and citation omitted).

Here, Plaintiff's daily activities are not inconsistent with her claim that her impairments preclude her from performing a full-time job in the rigors of a workplace setting. There is no evidence the minimal activities cited by the ALJ comprised a "substantial" portion of Plaintiff's day. <u>See</u> <u>Orn</u>, 495 F.3d at 639; <u>Childress</u>, 2015 WL 2380872, at *15 (C.D. Cal. May 18, 2015).

Furthermore, the ALJ failed to make adequate findings about the transferability of Plaintiff's activities to the workplace. The ALJ's conclusory

statement that "[s]ome of the physical abilities required in order to perform [Plaintiff's daily] activities are the same as those necessary for obtaining and maintaining employment" (AR 32), does not identify which activities translate into what workplace activities. The ALJ did not explain the frequency of any of the activities cited or relate how they translated to the workplace environment. <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); <u>Blakes v. Barnhart</u>, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). As such, reliance upon Plaintiff's activities of daily living here does not constitute a specific, clear, and convincing reason supported by substantial evidence for discredit her symptom testimony. <u>Martinez</u>, 721 F. App'x at 600; <u>Trevizo</u>, 871 F.3d at 682; <u>Orn</u>, 495 F.3d at 630; <u>Dickinson v. Saul</u>, 2019 WL 3837652, at *9 (D. Idaho Aug. 13, 2019) (ALJ's conclusion that claimant could perform light work because she could handle a checkbook, cook, walk for exercise twice a week, and care for herself, insufficient because ALJ did not explain how the activities, "which are not performed on a sustained basis," involved the same tasks required in a work setting); <u>Swanson v. Colvin</u>, 2017 WL 8897144, at *21 (D. Ariz. Feb. 7, 2017) (claimant's daily activities of "simple meal preparation, light housekeeping, driving short distances, and caring for her children are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace" (internal quotation marks omitted)).

Next, the ALJ found that Plaintiff received "merely" conservative treatment, and specifically mentioned her epidural shots and prescription medication. AR 32. However, several courts have cast doubt that injections alone are conservative treatment or have found they are not conservative. <u>See,</u>

1   e.g., Garrison, 759 F.3d at 1015 n.20 (expressing doubt that "shots to the neck
2   and lower back qualify as 'conservative' medical treatment"); Contreras v.
3   Berryhill, 2020 WL 619792, at *4 (N.D. Cal. Feb. 10, 2020) (stating
4   "[n]umerous courts have rejected the argument that injections are
5   'conservative'"; collecting cases). This is especially true when injections are
6   combined with other treatment, such as Plaintiff's strong prescription pain
7   medications, including Norco, in addition to her cocktail of medications for
8   other symptoms. AR 390, 396-97, 399, 428, 468, 681-82, 692, 722; See, e.g.,
9   Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (suggesting
10  powerful pain medications and injections were not conservative treatment);
11  Morgan v. Saul, 2020 WL 136587, at *7 (C.D. Cal. Jan. 10, 2020) ("[T]here is
12  no question that [claimant]'s treatment – which consisted of strong prescription
13  pain medications such as Norco and fentanyl, along with epidural and trigger
14  point injections – was not conservative.") Christine G. v. Saul, 402 F. Supp.
15  3d 913, 926 (C.D. Cal. 2019) ("Many courts have previously found that strong
16  narcotic pain medications and spinal epidural injections are not considered to
17  be 'conservative' treatment.'"; collecting cases). Accordingly, the Court finds
18  ALJ's rationale based on "conservative" treatment is not supported here.
19      Finally, the ALJ found Plaintiff's statements about her symptoms
20  "inconsistent with the objective medical evidence" and that the medical
21  evidence did not "generally support" her allegations of intensity, persistence,
22  and limiting effects of symptoms. AR 32-33. However, inconsistency between
23  Plaintiff's statements and the objective evidence, alone, is not a sufficient basis
24  to discount testimony. See Rollins, 261 F.3d at 856-57; Burch v. Barnhart, 400
25  F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support
26  subjective symptom allegations cannot form the sole basis for discounting
27  testimony); Dschaak v. Astrue, 2011 WL 4498835, at *1 (D. Or. Sept. 27,
28  2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as

13

erroneous, the ALJ's . . . determination could not rely solely on conflicts with the medical evidence.").

Thus, assuming without deciding that the ALJ properly discounted Plaintiff's testimony based on inconsistency with the medical evidence, as such ground cannot be the sole basis to do so, the ALJ's discounting of Plaintiff's subjective symptom testimony is not supported by specific, clear, and convincing reasons supported by substantial evidence. Further, here, the Court cannot conclude the ALJ's error was harmless. See, e.g., Brown-Hunter, 806 F.3d at 492-93 (ALJ's failure adequately to specify reasons for discrediting claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the claimant's testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

## C.   Remand is appropriate.

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court finds remand for further proceedings is warranted. It is unclear, in light of other evidence discussed by the ALJ, whether Plaintiff is in

fact disabled. For example, the ALJ gave "great weight" to the State Agency medical consultants and the consultative examiner, at least one of whom found Plaintiff capable of medium exertional work, and all concluded Plaintiff was not disabled. AR 33, 129-30, 132, 140-41, 143, 156-57, 160, 172, 562. This finding and the related opinion evidence was not challenged here on appeal. Because it is unclear, considering this and other evidence, whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16; 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."); Jesus v. Colvin, 2015 WL 4999501, at *9 (N.D. Cal. Aug. 20, 2015) (remanding because record created doubts as to whether claimant was in fact disabled, and although objective medical evidence was not sufficient alone to reject claimant's pain testimony entirely, claimant's subjective reports alone could not support disability finding).

Accordingly, on remand, the ALJ shall reassess Plaintiff's subjective complaints, and then reassess Plaintiff's RFC in light of that assessment, and proceed through the remaining steps of the disability analysis, as warranted.

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: July 7, 2020

JOHN D. EARLY
United States Magistrate Judge